JACK SILVER, ESQ. SBN # 160575
Law Office of Jack Silver
KIMBERLY BURR, ESQ. SBN # 193805
Post Office Box 5469
Santa Rosa, CA 95402-5469
Telephone 707-528-8175
Facsimile 707-528-8675
lhm28843@sbcglobal.net

Attorneys for Plaintiff
NORTHERN CALIFORNIA RIVER WATCH

WILLIAM D. WICK (SBN# 063462)
ANNA L. NGUYEN (SBN#. 226829)
WACTOR & WICK LLP
180 Grand Avenue, Suite 950
Oakland CA 94612-3572
Telephone: (510) 465-5750
Facsimile: (510) 465-5697
BillWick@ww-envlaw.com

Attorneys for Defendants
CANYON ROCK COMPANY, INC.
RIVER ROCK READY MIX, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORTHERN CALIFORNIA RIVER WATCH, a non-profit Corporation,<br><br>Plaintiff,<br><br>v.<br><br>CANYON ROCK COMPANY; RIVER READY MIX, INC.; and DOES 1-10, Inclusive,<br><br>Defendants. | CASE NO: C 04 04670 JSW<br><br>**CONSENT DECREE AND ORDER** |

//

//

C04 04670 JSW
Consent Decree and Order        1

1   WHEREAS, on or about November 3, 2004 plaintiff Northern California River Watch, a non profit corporation, on behalf of itself and its members, ("RIVER WATCH") filed this action alleging that defendant, Canyon Rock Company dba River Ready Mix, Inc., ("CANYON ROCK") was in violation of the Clean Water Act ("CWA"), 33 U.S.C. §1251 et seq., specifically Section 505, 33 U.S.C. §1365 and Section 301, 33 U.S.C. § 1311 and under Business and Professions Code § 17200 et seq.; after serving notice on CANYON ROCK and the appropriate governmental agencies; and,

WHEREAS the Complaint requests declaratory and injunctive relief, the imposition of civil penalties for each violation of the aforementioned laws and statutes, and an award to RIVER WATCH of its litigation costs, including reasonable attorney fees and costs; and,

WHEREAS CANYON ROCK vigorously denied the alleged violations, and asserted a counterclaim seeking declaratory relief that it is in compliance with the Clean Water Act; and,

WHEREAS, on October 13, 2005 the parties met with ADR-appointed Helen H. Kang and were able to resolve all disputes; and,

WHEREAS the parties agree that it is in their mutual interests to enter into this Consent Decree setting forth the terms and conditions appropriate to resolving the allegations set forth in the Complaint; and,

WHEREAS this Consent Decree constitutes a constitutes a full and final adjudication of all claims in this action arising from or relating to the allegations in the Complaint that were, or could have been, asserted against CANYON ROCK, including but not limited to any claim based upon alleged violations of the Clean Water Act (33 U.S.C. § 1271 et seq.), or any other statute or provision of common law. It is not an admission of jurisdiction over or liability for any claims or an admission of any fact;

WHEREFORE, the parties have consented to the entry of this Consent Decree and Order without trial of any issues and hereby stipulate that, in order to settle the claims alleged in the Complaint and the Counterclaim, this Consent Decree should be entered.

//

//

C04 04670 JSW
Consent Decree and Order                    2

**PREAMBLE**

1. RIVER WATCH's claims relate to CANYON ROCK's historical and continuing activities at its rock quarry and cement recycling and manufacturing facilities (hereafter, "FACILITIES") located on Highway 116 in Sonoma County near the town of Forestville, California. The FACILITIES are commercial businesses selling rock, gravel, and cement, to developers, builders, and individuals.

2. RIVER WATCH's Complaint alleges CANYON ROCK had been violating the Clean Water Act at the FACILITIES by discharging stormwater into Green Valley Creek, the Russian River, its tributaries, wetlands, and/or hydrologically connected water bodies all of which are waters of the United States, in violation of California's General Permit ("General Permit") for discharges of stormwater associated with industrial activities, and without a National Pollutant Discharge Elimination System ("NPDES") permit; and, by failing by to adequately develop a SWPPP and Monitoring Program in compliance with California's General Permit ("General Permit") for discharges of stormwater associated with industrial activities.

3. CANYON ROCK's site is bounded on the south east side by Green Valley Creek. The site has two main ponds and two small ponds. One of the small ponds is used primarily for concrete loading and washout. The ponds are unlined. All discharges are intended to be directed to the ponds prior to discharge into Green Valley Creek. Green Valley Creek is a major tributary of the Russian River which is listed as impaired for sediment under Section 303(d) of the Clean Water Act. Volunteers launched a major creek restoration effort just downstream of CANYON ROCK in 2003, involving the National Oceanic and Atmospheric Administration and the Department of Fish and Game.

4. After several years, CANYON ROCK has almost completed the construction of a large new cement batch plant and relocation of its cement batch plant out of the floodway of Green Valley Creek. This reduces the likelihood of releases to Green Valley Creek.

5. CANYON ROCK has graded the western portion of the property so that it slopes away from Green Valley Creek. In addition CANYON ROCK has plans to enlarge its pond system. The berms on the property are good and support some vegetation.

## **TERMS OF CONSENT DECREE**

I. CANYON ROCK MEASURES

A. CANYON ROCK agrees to comply with the following requirements of the Region I Basin Plan and the following EPA benchmarks in the draft stormwater permit:

    (1) pH: 8.

    (2) TSS: 100 mg/L

B. CANYON ROCK agrees to undertake the following measures:

    (1) Hydro seed and/or apply soil binders as needed and where feasible, in areas not subject to mining operations (including overburdens and high walls, roads, yards and berms).

    (2) Within six months, remove the existing cement batch plant and bins from the present location and re-locate to an area farther from Green Valley Creek;

        (a) Within one year, pave the cement batch plant area and parking lot;

        (b) Until the existing cement batch plant is relocated, install a bigger pump or initiate a process to reduce excess turbidity and sediment.

    (3) Review and update the SWPPP as necessary by July 1 of each year.

        (a) Incorporate into the SWPPP the following mitigation measure:

"Mining activities and the operation of heavy equipment on site shall be done in such a manner as to avoid repeated crossing of drainage ways or puddles that are actively flowing into the sediment pond/traps and offsite."

        (b) Attach as an appendix to the SWPPP the Material Safety Data Sheet for cement.

    (4) Within one year, increase the width and height of the berm between the yard and Green Valley Creek.

(5) Without waiving or compromising in any respect its rights to well water on its property, CANYON ROCK agrees not to substantially increase its use of the well at the facility nearest Green Valley Creek for its day-to-day operations, unless no alternative source of water is available at reasonable cost.

(6) For two seasons, monitor for storms that generate discharge to Green Valley Creek (one at first flush and thereafter, sampling at least two weeks apart). CANYON ROCK will notify RIVER WATCH representatives as soon as reasonably possible, but no less than two hours, of its plans to sample. At reasonable times, RIVER WATCH representatives may contact CANYON ROCK representatives to ask if sampling is likely.

(7) For two years in a row, sample water in the ponds at first flush and once during the summer, and provide notice to RIVER WATCH and allow RIVER WATCH to take split samples (at its own expense) if it chooses to do so. The samples will be analyzed for the following compounds: arsenic, cadmium, total chromium copper, lead, mercury, nickel, zinc, total aluminum, TPHg, TPHd and MTBE.

## II. MITIGATION FEES AND COSTS

A. CANYON ROCK shall pay the sum of Eight Thousand Dollars ($8,000.00) to the Redwood Empire Environmental Center, with the funds dedicated to restoration activities related to Austin Creek and/or the Russian River. Such payment has been delivered to the Law Office of Jack Silver, but shall be returned if this Consent Decree is not entered.

B. As a Supplemental Environmental Project, CANYON ROCK agrees to install a treatment system to treat the discharge from CANYON ROCK's pond (in the former Ready Mix area) to Green Valley Creek. CANYON ROCK agrees to investigate and install a treatment system to most efficiently

C04 04670 JSW
Consent Decree and Order 5

1      reduce sediment to Green Valley Creek, at an anticipated total cost of Fifty Thousand Dollars

2      ($50,000.00) or less.

3 C.   CANYON ROCK shall reimburse RIVER WATCH in the amount of Forty-Eight Thousand Dollars

4      ($48,000.00) to help defray RIVER WATCH's investigation fees and costs, expert fees and costs,

5      reasonable attorneys' fees, and all other costs incurred as a result of investigating the activities

6      of CANYON ROCK and negotiating a resolution of the lawsuit. Such payment has been delivered

7      to the Law Office of Jack Silver , but shall be returned if this Consent Decree is not entered.

8      This sum will constitute a complete settlement of RIVER WATCH's claims for any and all costs

9      and fees incurred in this action to the date of entry of this Consent Decree.

10

11 **III.**   **RELEASES**

12 A.   <u>RELEASE OF CANYON ROCK BY RIVER WATCH</u>

13      In exchange for the consideration set forth herein RIVER WATCH covenants not to sue and

14      hereby releases and discharges CANYON ROCK from (1) any and all claims, costs, expenses,

15      damages or losses arising or relating to this lawsuit, and (2) any and all claims, costs, expenses

16      damages or losses which RIVER WATCH could have asserted and could now assert.

17 B.   <u>RELEASE OF RIVER WATCH BY CANYON ROCK</u>

18      In exchange for the consideration set forth herein, CANYON ROCK covenants not to sue and

19      hereby releases and discharges RIVER WATCH from (1) any and all claims, costs, expenses,

20      damages or losses arising or relating to this lawsuit, and (2) any and all claims, costs, expenses

21      damages or losses which CANYON ROCK could have asserted and could now assert.

22 C.   <u>INTENDED SCOPE OF RELEASE</u>

23      To the fullest extent possible, this CONSENT DECREE shall act as a full and final resolution of

24      any and all claims, actions, causes of action based on any statute or provisions of common law,

25      whether legal or equitable, and all liability arising out of, or in any way related to, claims arising

26      out of the operation of or discharges from CANYON ROCK's FACILITIES at any time up to the

27

1          effective date of this CONSENT DECREE, which were raised or could have been raised in this
2          litigation.
3 D.    <u>EXCEPTED CLAIMS FROM RELEASE</u>
4          The parties to this CONSENT DECREE acknowledge and agree that the releases set out above do
5          not apply to any action or claim by either party to enforce the terms of this CONSENT DECREE.
6 E.    <u>WAIVER OF RIGHTS UNDER CALIF. CIVIL CODE SECTION 1542</u>
7          With respect to the claims released under this Paragraph, each party to this CONSENT DECREE
8          expressly and specifically waives any rights and benefits available to it under Calif. Civil Code
9          Section 1542, which provides:
10         "A general release does not extend to claims which the creditor does not know or suspect to
11         exist in his favor at the time of executing the release, which if known by him must have
12         materially affected his settlement with the debtor."
13
14 **IV. NON-PARTICIPATION IN FUTURE ACTIONS**
15         RIVER WATCH agrees that neither RIVER WATCH (including, without limitations, its officers,
16 executive staff, members of its governing board), nor any organization under the control of RIVER
17 WATCH, its officers, its executive staff, or members of its governing board, will file any suit, claim or
18 action against CANYON ROCK for violations that were the subject of this lawsuit or claims released in
19 Paragraph III.A. RIVER WATCH agrees that RIVER WATCH will not support others suits, claims or
20 action, by providing financial assistance, personnel time or other affirmative actions against CANYON
21 ROCK that may be proposed by other groups or individuals with regard to the kinds of claims or
22 violations that were the subject of this lawsuit or claims released in Paragraph III.A. RIVER WATCH
23 further agrees not to file any suit, claim or action against CANYON ROCK or support other suits, claims
24 or actions, by providing financial assistance, personnel time or other affirmative actions against CANYON
25 ROCK that may be proposed by other groups or individuals, without implementing the following disputes
26 resolutions procedures:
27
28 C04 04670 JSW
     Consent Decree and Order                  7

1  A.  If RIVER WATCH believes CANYON ROCK is in violation of any environmental law, RIVER WATCH
2      shall notify CANYON ROCK of the alleged violation(s) in writing. CANYON ROCK shall then have
3      twenty (20) days from receipt of the written notice to respond to the allegations.
4  B.  If CANYON ROCK responds to the claim of violation and proceeds to commence remedial actions
5      within forty (40) days of RIVER WATCH's written notice of the alleged violation, and diligently
6      pursues completion, RIVER WATCH shall take no further action against CANYON ROCK.
7  C.  If CANYON ROCK denies or fails to acknowledge the claim of violation, the parties shall meet
8      and confer within thirty (30) days of the date for CANYON ROCK's response pursuant to
9      Paragraph IV.A in an effort to mediate the dispute.
10 D.  If the parties cannot informally resolve the conflict , the parties shall submit the matter to
11     mediation within thirty (30) days or as soon as reasonably possible after the date they informally
12     met and conferred.
13 E.  Should mediation fail, either party may apply to a court of competent jurisdiction for relief.
14
15 **V.  DISPUTE RESOLUTION**
16 A.  Should the implementation by CANYON ROCK of the conditions set forth above not take place
17     within the deadlines set despite the timely good faith efforts of CANYON ROCK to acquire the
18     necessary permit(s), approval(s), review or other necessary steps by the supervising Federal,
19     State or local agency or agencies, or due to factors unforeseen at the time this CONSENT
20     DECREE was entered into by the parties, CANYON ROCK agrees to meet and confer with RIVER
21     WATCH to discuss modifying, by written agreement, the deadlines or conditions set forth above
22     to reflect the necessary permitting process(es) or other basis for delay. CANYON ROCK shall
23     notify RIVER WATCH in writing as soon as the potential failure to comply becomes apparent, and
24     in any case not less than twenty (20) days prior to any deadlines set forth above, and shall
25     describe the reasons for the potential delay.
26
27
   C04 04670 JSW
28 Consent Decree and Order            8

1  B. If RIVER WATCH believes CANYON ROCK is in violation of this CONSENT DECREE, RIVER WATCH shall notify CANYON ROCK of the alleged violation(s) in writing. CANYON ROCK shall then have twenty (20) days from receipt of that written notice to respond to the allegations.

4  C. If CANYON ROCK responds to the claim of violation(s) and proceeds to commence remedial actions within forty (40) days RIVER WATCH's written notice of the alleged violation(s), and diligently pursues completion, RIVER WATCH shall take no further action against CANYON ROCK.

7  D. If CANYON ROCK denies or fails to acknowledge the claim of violation, the parties shall meet and confer within thirty (30) days of the date for CANYON ROCK's response pursuant to Paragraph V.B. in an effort to mediate the dispute.

10 E. If the parties cannot informally resolve the conflict , the parties shall submit the matter to mediation within thirty (30) days or as soon as reasonably possible after the date they informally met and conferred.

13 F. Should mediation fail, either party may apply to a court of competent jurisdiction for relief.

## VI. NO ADMISSIONS

This CONSENT DECREE shall not constitute, and no action taken pursuant to this CONSENT DECREE shall constitute, any admission of fact, liability, causation, responsibility or fault, or proportionate share thereof, by any party with respect to any matter referred to herein. This CONSENT DECREE shall not be used by any party in any administrative or judicial action or proceeding, or in any arbitration or alternative dispute resolution proceeding for any purpose, except for the purpose of establishing its terms in any action to enforce the terms of this CONSENT DECREE.

## VII. AUTHORITY OF REPRESENTATION

Each of the parties to this CONSENT DECREE represents and warrants that the person(s) executing this CONSENT DECREE on its behalf is a representative duly authorized to bind it and is empowered to enter into this CONSENT DECREE on its behalf.

C04 04670 JSW
Consent Decree and Order                9

## VIII. NOTICES

Any notice required or permitted to be given pursuant to this CONSENT DECREE shall be in writing and shall be deemed to be given when served personally or by facsimile, or on the tenth (10th) day after mailing if mailed by United States mail, postage prepaid, return receipt requested, and addressed to the address for each party as set forth below:

If to RIVER WATCH:

Northern California River Watch
6741 Sebastopol Avenue, Suite 140,
Sebastopol, CA 95472
Telephone: 707-824-4372
Facsimile: 707-824-4372

WITH A COPY TO:

Jack Silver, Esquire
Law Office of Jack Silver
Post Office Box 5469
Santa Rosa, CA 95402
Telephone: 707-528-8175
Facsimile: 707-528-8675

If to CANYON ROCK:

Wendel Trappe
Canyon Rock Co., Inc.
P.O. Box 639
Forestville, CA 95436
Telephone: 707-887-2207
Facsimile: 707-887-9258

WITH A COPY TO:

William D. Wick, Esquire
Wactor & Wick, LLP
180 Grand Avenue
Suite 950
Oakland, CA 94612
Telephone: 510-465-5750
Facsimile: 510-465-5697

C04 04670 JSW
Consent Decree and Order                    10

## IX. COUNTERPARTS AND FACSIMILE SIGNATURES

Each signatory of this CONSENT DECREE signing on behalf of another, warrants that he or she has the authority to sign on behalf of said person or entity and on behalf of all persons covered by this CONSENT DECREE. This CONSENT DECREE may be executed in counterparts with each counterpart being interpreted as an original. Any party may transmit its execution of this CONSENT DECREE by facsimile, in which case such party shall provide the original execution page within three (3) business days to the other party. A party's execution page transmitted by facsimile may be used as though it were an original signature notwithstanding the fact that the party did not provide an original signature.

## X. ADVICE OF ATTORNEYS

Each party herein has evaluated its respective position with regard to this matter through its own investigation and through its attorneys. Each party acknowledges that it enters into this CONSENT DECREE upon the advice of its respective attorneys, that it has read this CONSENT DECREE, discussed it with its attorneys, that the terms and conditions of this CONSENT DECREE are fully understood and that it freely and voluntarily enters into this CONSENT DECREE.

## XI. CONSTRUCTION OF AGREEMENT

The parties acknowledge that this CONSENT DECREE is the product of informed negotiating among the parties, and if any part of this CONSENT DECREE is deemed ambiguous or in conflict, it shall be construed as if it were drafted jointed by all parties.

## XII. ENTIRE AGREEMENT

The parties warrant and agree that this CONSENT DECREE constitutes the entire agreement between them concerning the subject matter hereof. Each party represents, warrants and agrees that no promise or agreement not expressed herein has been made to it; that in executing this CONSENT

C04 04670 JSW
Consent Decree and Order 11

DECREE, no party is relying on any statement or representation made by any other party, or any other party's representatives concerning the subject matter, basis or effect of this CONSENT DECREE other than as set forth herein; and, that each party is relying solely on its own judgment and knowledge.

**XIII. SEVERABILITY**

Except for Paragraph III. RELEASES, each provision of this CONSENT DECREE is intended to be severable. If any provision (or the application of any provision to any party or circumstance) of this CONSENT DECREE other than Paragraph III is declared to be illegal, invalid or unenforceable for any reason, such illegality shall not invalidate the remainder of this CONSENT DECREE. In that event, this Consent Decree shall be construed as if it did not contain the invalid or illegal part, and the rights and obligations of the parties shall be construed and enforced accordingly. If any portion of Paragraph III is declared invalid or unenforceable in any material respect, the affected party shall have the right to rescind this CONSENT DECREE.

**XIV. MODIFICATION**

The terms of this CONSENT DECREE shall not be changed, revised, or modified except by a written instrument signed by the parties to this Consent Decree and shall not take effect until entered by the Court.

**XV. GENERAL PROVISIONS**

A. The contractual interpretation of this CONSENT DECREE and all obligations, rights, privileges, and responsibilities under it shall be governed and construed in accordance with applicable federal law.

B. Nothing in this CONSENT DECREE creates, nor will be construed as creating, any claim in favor of any person not a party to this CONSENT DECREE.

1  C.  This CONSENT DECREE may be executed in two or more counterparts or in separate signature pages, each of which shall be deemed an original, but all of which, together, will constitute one and the same instrument.

4  D.  Good faith and best efforts are an implied term regarding each party's duty to comply with the terms of this CONSENT DECREE and Order.

6  E.  Each party consents to the entry of this CONSENT DECREE and Order subject to the provisions of Clean Water Act § 505(c)(3) that "[n]o consent judgment shall be entered in an action in which the United States is not a party prior to forty-five (45) days following the receipt of a copy of the proposed consent judgment by the Attorney General and the Administrator [of the U.S. EPA]." 33 U.S.C. §§ 1354(c)(3).

11  F.  On __06-02-06__, 2006, RIVER WATCH sent this proposed CONSENT DECREE and Order by mail to the U.S. Attorney General and the Administrator of the U.S. EPA. Upon written notification by U.S. EPA and/or U.S. Department of Justice that those agencies' reviews have concluded, or the expiration of the forty-five (45) day period, whichever is the earlier, the shall Court enter this CONSENT DECREE and Order.

16  G.  This Court shall retain jurisdiction from the date of entry of this CONSENT DECREE and Order through the date of termination of this CONSENT DECREE and Order for the purposes of (1) resolving any dispute of this CONSENT DECREE, and (2) disposing of any motion to enforce this CONSENT DECREE, or of any contempt petition, filed on or before the date of termination.

The undersigned agree to the foregoing:

Dated: 6/5/06       Northern California River Watch,
                    Plaintiff

                    By: _____

C04 04670 JSW
Consent Decree and Order                13

Dated: 6.2.06     Canyon Rock Company dba River Ready Mix, Inc.
                  Defendant

                  By: _____

APPROVED AS TO FORM:

Dated: 6/12/06    _____
                  Jack Silver, Esq.
                  Attorney for Plaintiff
                  Northern California River Watch

Dated: June 8, 2006  _____
                     William D. Wick, Esq.
                     Attorney for Defendant
                     Canyon Rock Company dba River Ready Mix, Inc.

ORDER

APPROVED AND SO ORDERED,

DATED: July 19, 2006     _____
                         Honorable Jeffrey S. White
                         United States District Judge

C04 04670 JSW
Consent Decree and Order                 14